UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW HARTLEY,

           Plaintiff,

     v.

SUNBELT RENTALS, INC. et al.,

           Defendants.

CASE NO. 24-cv-01078-JHC

ORDER

# I

## INTRODUCTION

This matter comes before the Court on Defendant Custom Equipment LLC's Motion for Summary Judgment (Dkt. # 39) and Defendant Sunbelt Rentals, Inc.'s Motion for Summary Judgment (Dkt. # 45). Defendants[1] seek summary judgment dismissal of all of Plaintiff's claims. *See* Dkt. ## 39; 45. Plaintiff responds that questions of material fact preclude summary

---

[1] Plaintiff's Complaint names another Defendant, Stratford-Cambridge Group (SGI). *See* Dkt. # 1-1. Custom Equipment moves for summary judgment dismissal of the claims against SGI. Dkt. # 39 at 17. As explained below, the Court grants SGI summary judgment as to all of Plaintiff's claims, so the Court uses the term "Defendants" to refer solely to Custom Equipment and Sunbelt Rentals.

judgment for Defendants.  Dkt. ## 49; 50.  For the reasons below, the Court GRANTS in part and DENIES in part Defendants' motions.

## II

### BACKGROUND

A.    Factual Background

Plaintiff Matthew Hartley sues Defendants Custom Equipment and Sunbelt Rentals to recover for personal injuries sustained in a workplace accident on June 14, 2021.  Dkt. # 1-1 at 5. Plaintiff testified that at the time of the accident, he was moving a Sunbelt Rentals Hy-Brid HB-1030 scissor lift between buildings.  Dkt. # 51-1 at 9:6–10:2; *see* Dkt. # 51-25 at 5.  As he navigated down a ramp, he let go of the joystick that controlled the movement of the lift because the lift "was starting to speed up."  Dkt. # 51-1 at 9:7–11.  When he released the joystick, Plaintiff expected the lift to stop moving.  *Id.*  Instead, the lift "kept speeding up," even after he hit the lift's emergency stop button (e-stop).  *Id.* at 9:12–14.  Plaintiff understood this was "not good," so he braced himself on the lift's back rail.  *Id.* at 9:14–10:2.  The lift then collided with a concrete wall and came to an abrupt stop.  *Id.* at 21:23–22:7.

Plaintiff retained Craig Sylvester, a forensic engineering expert, to determine the "root cause" of the accident.  Dkt. # 53 at 2; *see also* Dkt. ## 41 at 2; 51-25 at 5–6.  According to Sylvester, the lift "experienced a loss of braking control while descending the parking garage ramp and crashed into a concrete wall due to (1) a mis-wired e-stop on the Platform Control box and (2) the lift's drive system that had one or both parking brakes mechanically disengaged."  Dkt. # 51-25 at 29.  Sylvester also concluded that the lift's "drive system parking brake mechanical lever and drive enable interlock design is inadequate to prevent the lift from inadvertently being operated with the drive brakes mechanically disengaged AND the drive system enabled at the same time."  *Id.* at 30.  He contends that these conclusions are "based on a

reasonable degree of engineering and scientific probability and are based on the ongoing investigation conducted by Sylvester Forensics." *Id.* at 29. He adds that his conclusions are based on several sources of information, including eye-witness deposition testimony from Plaintiff and his spotter, Arturo Caleb Zertuche, three hands-on inspections of the lift, his own engineering analysis of the lift's braking design, and the incident investigation results provided by Defendants. *Id.* at 29–30.

Defendants retained four expert witnesses: (1) John L. Straubinger, a mechanical engineer tasked with "attend[ing] joint inspections of the Hy-Brid lift and evaluat[ing] the braking system[,]" *see* Dkt. # 58 at 11; (2) Mark J. Lawless, President of Construction Systems Management Inc. (CSMI), *see* Dkt. # 43 at 53; (3) Dr. Lawrence Murphy, a board-certified neurologist, *see id.* at 88; and (4) Dr. Bruce A. Rolfe, a board-certified orthopedic surgeon, *see id.* at 115.

B.     Procedural History

This case was removed from King County Superior Court on the basis of diversity of citizenship. Dkt. # 1 at 4; *see* 28 U.S.C. § 1332. In July 2024, Sunbelt Rentals answered Plaintiff's Complaint, and in September 2024, Custom Equipment answered Plaintiff's Complaint. *See* Dkt. ## 1-3; 15. In July 2025, nearly a year later, Defendants sought to amend their Answers to add BNBuilders, Inc.—a nonparty that was the General Contractor at the jobsite where the accident occurred—as a defendant. *See* Dkt. ## 27 at 2; 28 at 2. But the Court denied these motions. Dkt. # 36. The Court also denied Defendants' motion to exclude the testimony of Plaintiff's expert, and it denied Plaintiff's motion to exclude the testimony of Defendants' expert witnesses. Dkt. # 69.

Defendants now move for summary judgment. Dkt. ## 39; 45. Plaintiff clarifies that he intends to bring only a design defect claim and a failure to warn claim against Custom

Equipment, and he says that his only claim against Sunbelt Rentals is for negligence. Dkt. ## 49 at 20; 50 at 16.[2] Plaintiff also pursues a theory of res ipsa loquitur against both Defendants. Dkt. ## 49 at 17–20; 50 at 20–23.

## III

### DISCUSSION

A.    Summary Judgment Standards

"[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (quoting *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996)). This case is in federal court on the basis of diversity jurisdiction, so the Court applies Washington state substantive law and the federal summary judgment standard. *See* Dkt. ## 1 at 3; 8.

Under federal law, summary judgment is warranted when the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for

---

[2] On this basis, the Court grants summary judgment as to all claims in favor of SGI. *See* Dkt. ## 49 at 20–21; 39 at 17. Plaintiff says that he does not dispute SGI's nonliability for the manufacture and distribution of the scissor lift at issue. Dkt. # 49 at 21. While Plaintiff also says that he "reserve[s] the right to seek a remedy from the Court" if evidence surfaces that SGI was involved in the manufacture and distribution of the lift, *id.*, summary judgment is appropriate because Plaintiff has not come forward with any evidence that would create a genuine issue of material fact about SGI's liability. Dkt. # 39 at 17; *see, e.g.*, *James v. City of Long Beach*, 18 F. Supp. 2d 1078, 1082 (C.D. Cal. 1998) (citing *Celotex*, 477 U.S. at 323–24) ("Where, as here, the non-moving party has the burden of proof at trial, summary judgment is appropriate if the non-moving party fails to come forward with any evidence which would create a genuine issue of material fact."). For the same reasons, the Court grants Custom Equipment's motion for summary judgment as to any after sale duty to warn claim under RCW 7.72.030(1)(c). *See* Dkt. ## 39 at 14; 64 at 1.

1    the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing

2    *Anderson*, 477 U.S. at 248–49).  Courts must "view the facts and draw reasonable inferences in

3    the light most favorable to the [non-moving] party." *Scott v. Harris,* 550 U.S. 372, 378 (2007).

4         The moving party bears the initial burden of showing there is no genuine dispute of

5    material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the

6    moving party does not bear the ultimate burden of persuasion at trial, it can show the lack of

7    such a dispute by either: (1) producing evidence negating an essential element of the nonmoving

8    party's case, or (2) showing that the nonmoving party lacks evidence of an essential element of

9    its claim or defense.  *Metro. Grp. Prop. & Cas. Ins. Co. v. Fite*, 738 F. Supp. 3d 1371, 1376

10   (W.D. Wash. 2024) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106

11   (9th Cir. 2000)).  If the moving party meets its burden of production, the burden then shifts to the

12   nonmoving party to identify specific facts from which a factfinder could reasonably find in the

13   nonmoving party's favor.  *Id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250).

14   B.    State Law Claims

15        The Washington Product Liability Act (WPLA) is "the exclusive remedy for product

16   liability claims" as it "supplants all common law claims or actions based on harm caused by a

17   product." *Macias v. Saberhagen Holdings, Inc.*, 175 Wash. 2d 402, 409, 282 P.3d 1069 (2012)

18   (citations omitted).  The statute defines a "product liability claim" broadly to include "any claim

19   or action brough for harm caused by the manufacture, . . . design, . . . warnings, instructions, . . .

20   or labeling of the relevant product.  RCW 7.72.010(4).  Thus, the WPLA "creates a single cause

21   of action for product-related harm with specified statutory requirements for proof." *Kirkland v.*

22   *Emhart Glass S.A.*, 805 F. Supp. 2d 1072, 1076 (W.D. Wash. 2011) (citing *Stanton v. Bayliner*

23   *Marine Corp.,* 123 Wash.2d 64, 71, 866 P.2d 15 (1993)).

24

Under the WPLA, there are different standards of liability for manufacturers and product sellers. *See* RCW 7.72.030–.040.  Manufacturers, among other things, are strictly liable for products that are not reasonably safe as designed and for products that are not reasonably safe due to inadequate warnings.  RCW 7.72.030; *see Macias*, 175 Wash. 2d at 409 ("Strict liability principles apply to both defective design and failure to warn cases.").  On the other hand, product sellers are liable under the WPLA only if the plaintiff's harm was proximately caused by the product seller's (1) negligence; (2) breach of an express warranty; or (3) the intentional misrepresentation of facts or intentional concealment of information.  RCW 7.72.040(1)(a)–(c).

Custom Equipment moves for summary judgment on Plaintiff's manufacturer design defect and failure to warn claims under RCW 7.72.030(1)(a) and (b).  Dkt. # 39.  Sunbelt Rentals moves for summary judgment on Plaintiff's product seller negligence claim under RCW 7.72.040.  Dkt. # 45.

1.     Design Defect and Failure to Warn

*Defective Design.*  The elements of a design defect claim under the WPLA are (1) a manufacturer's product; (2) that was not reasonably safe as designed; and (3) caused harm to the plaintiff.  RCW 7.72.030(1); *see Bruns v. PACCAR, Inc.*, 77 Wash. App. 201, 208, 890 P.2d 469 (1995).  The causation element of a design defect claim requires the plaintiff to show that the alleged defect or unsafe condition proximately caused their injuries.  RCW 7.72.030(1); *see Bruns*, 77 Wash. App. at 214.  Proximate cause consists of cause in fact and legal causation. *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wash.2d 68, 82, 1 P.3d 1148 (2000).  Cause in fact is the "but for" cause of the injury.  *Id.* (citing *Schooley v. Pinch's Deli Mkt., Inc.,* 134 Wash.2d 468, 478, 951 P.2d 749 (1998)).  Legal causation is a "much more fluid concept" that considers "whether, as a matter of policy, the connection between the ultimate result and the act of the

defendant is too remote or insubstantial to impose liability." *Id.* (quoting *Schooley*, 134 Wash.2d at 478–79).

As for Plaintiff's design defect claim, Custom Equipment contends that Plaintiff cannot show legal causation. Dkt. # 39 at 12–13. According to Defendant, Plaintiff's expert— Sylvester—offers opinions about the accident that are little more than "speculation." *Id.* at 13. Custom Equipment also contends that Sylvester's report contradicts Plaintiff's testimony that he drove the lift 15–20 times down the same ramp without incident before the accident. *Id.*

But these arguments principally address "but for" causation. The Court has deemed that Sylvester's report is admissible.[3] Dkt. # 69 at 6. His report is relevant because it will help the trier of fact decide facts in issue and is reliable because he reviewed numerous sources of information, used dependable principles and methods of forensic engineering, and applied these principles and methods to the facts of the case. *Id.* The trier of fact may still view Sylvester's opinions as less credible because Plaintiff repeatedly used the lift without incident before the accident and testing after the accident showed that the lift would not roll uncontrollably. *See* Dkt. # 39 at 13. Yet viewing the evidence in the light most favorable to Plaintiff, Sylvester's report establishes that the defective design of the lift's parking brakes was a root cause of the accident. Dkt. # 51-25 at 29; *see* Dkt. # 69 at 7. This shows there is a connection between Custom Equipment's design and Plaintiff's accident.

---

[3] Custom Equipment's arguments on this point ignore that an "expert may base an opinion on facts or data . . . that the expert has been made aware of . . . [and] they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703; *see* Dkt. # 64 at 4–9 (arguing Sylvester should be unable to rely on the BNBuilder incident report because it is, in Custom Equipment's view, not admissible evidence); *see also Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) ("Most evidentiary rules are procedural in nature, and the Federal Rules of Evidence ordinarily govern."). Even if this evidentiary rule could be considered procedural, *see id.* ("state evidence rules that are 'intimately bound up' with the state's substantive decision making must be given full effect by federal courts sitting in diversity") (citation omitted), Washington courts employ a similar rule. *Desranleau v. Hyland's, Inc.*, 10 Wash. App. 2d 837, 844, 450 P.3d 1203 (2019) ("ER 703 allows an expert witness to base their opinion on facts or data regardless of their admissibility[.]").

The case Custom Equipment principally relies on is *Little v. Countrywood Homes, Inc.*, 132 Wash. App. 777, 133 P.3d 944 (2006). *See* Dkt. # 39 at 13. Here, unlike in *Little*, Plaintiff has submitted evidence—in the form of Sylester's report—that would "allow[] a reasonable person to infer, without speculating," that Custom Equipment's defective design "more probably than not caused the accident." *Little*, 132 Wash. App. at 782. And while Custom Equipment says that Plaintiff cannot show legal causation, the *Little* court considered factual causation. *Id.* ("But even assuming that those conditions constituted breaches of a duty that Countrywood owed Little, he did not provide evidence showing more probably than not that one of those breaches caused his injuries."). Washington courts recognize that "[c]ause in fact usually is a question for the jury." *Id.* at 780. This "but for" causation can be decided as a question of law only when "the causal connection is so speculative and indirect that reasonable minds could not differ." *Moore v. Hagge*, 158 Wash. App. 137, 148, 241 P.3d 787 (2010) (citing *Doherty v. Mun. of Metro. Seattle,* 83 Wash. App. 464, 469, 921 P.2d 1098 (1996); *Yong Tao v. Heng Bin Li,* 140 Wash. App. 825, 834, 166 P.3d 1263 (2007)). Sylvester's report could allow a reasonable juror to find that there is a factual connection between the lift's brake design and the accident, so "but for" causation remains a question for the jury.

Thus, the Court denies the motion for summary judgment on the design defect claim.

*Failure to Warn.* Custom Equipment's motion does not mention the elements of a failure to warn claim under the WPLA nor does it substantively address the merits of this claim. *See* Dkt. # 39 at 11–13.[4] Alone, this precludes summary judgment. *Hoover v. Switlik Parachute*

---

[4] In its reply brief, Custom Equipment says the failure to warn claim is based on "speculation" that the brake levers were in the intermediate position. Dkt. # 64 at 8. The Court rejects this argument. Sylvester's report establishes that the position of the brake levers is a material fact in dispute. *See* Dkt. # 51-25 at 29–30. Besides, the Court need not consider arguments raised for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

ORDER - 8

*Co.*, 663 F.2d 964, 967 (9th Cir. 1981) ("Even where no evidence is presented in opposition to the motion, summary judgment should not be granted if the evidence in support of the motion is insufficient."). Even so, "[c]ausation is an element of all three theories of liability under the WPLA." *Moore v. Harley-Davidson Motor Co. Grp.*, 158 Wash. App. 407, 425, 241 P.3d 808 (2010); *see* RCW 7.72.030(1). And for the reasons discussed in relation to the design defect claim, Custom Equipment has not shown there is no genuine dispute of material fact on the element of causation. Thus, the Court denies Custom Equipment's motion with respect to Plaintiff's failure to warn claim under RCW 7.72.030(1)(b) too.

    2.    Product Seller Negligence

    Sylvester reports that during an inspection of the lift in January 2023, he identified a fault with the lift's e-stop. Dkt. # 51-25 at 6. According to Sylvester's report, "With the lift traveling forward or reverse, pressing the e-stop button did not stop the lift as designed. Instead, the lift continued to travel forward until the joystick was released." *Id.* He reports that during a subsequent inspection of the lift in July 2025, he found the lift's e-stop was wired incorrectly. Dkt. # 51-25 at 11–12. According to the report, this "defeated the emergency stop function designed to remove power from the lift's drive and prevent motion." *Id.* at 12. The report concludes that this incorrect wiring configuration was a "root cause" of the accident. *Id.* at 29.

    But Sunbelt Rentals contends that this evidence cannot show that there is a genuine dispute of material fact about whether it negligently miswired the lift's e-stop because these inspections took place years after the 2021 accident. Dkt. # 45 at 8–9. Sunbelt acknowledges that its technicians repaired the e-stop wiring twice in June 2020, but it notes there is no evidence the e-stop was miswired at that time. *Id.* at 9; *see* Dkt. # 51-25 at 27. Sunbelt also points out that it hired Equipment Experts, Inc. to repair the lift's e-stop after the accident, in November 2021. Dkt. # 45 at 9; *see* Dkt. # 46-5 at 16. And Sunbelt says Plaintiff testified that he released the

1    lift's joystick while the accident unfolded.  Dkt. # 45 at 9; *see* Dkt. # 51-1 at 9:13–21.  So,

2    according to Sunbelt, the miswiring is not a fact in issue because the e-stop only interrupts power

3    to the drive motors if power is being supplied through the drive enable switch on the joystick.

4    Dkt. # 45 at 9.

5            Plaintiff responds that Sylvester's report creates a genuine issue of material fact about

6    whether Sunbelt Rentals negligently maintained the lift's e-stop.  Dkt. # 50 at 16–18.  He also

7    identifies additional evidence that he says could lead a reasonable juror to find the e-stop was

8    miswired at the time of the accident.  *Id.*  He notes Terrence Teetz, the Sunbelt technician that

9    repaired the lift's e-stop in 2020, testified he did not recall having trouble figuring out the e-

10   stop's wiring and that he would look at a wiring schematic only if "he had trouble figuring out

11   the wires."  *See* Dkt. # 67-2 at 15:3–25.  And he says San Pan, the Sunbelt technician that

12   inspected the lift after the accident, testified that his inspection did not include the e-stop's

13   control box or wiring.  Dkt. # 51-19 at 10:11–12:8.  Plaintiff also reiterates that the e-stop did not

14   function as intended during the accident because it did not stop the movement of the lift.  Dkt. #

15   50 at 18.

16           The evidence that the lift was miswired at the time of the accident is not overwhelming,

17   but it must be considered in the light most favorable to Plaintiff.  And Plaintiff has presented

18   evidence that would allow a reasonable jury to find the lift's e-stop was miswired at the time of

19   the accident.  The evidence shows that the e-stop wiring was repaired multiple times before the

20   accident.  *See* Dkt. # 67-1 at 1–4. The technician that worked on the e-stop before the accident

21   testified that he would look at a wiring diagram only if "he had trouble figuring out the wires,"

22   and that he did not recall having trouble figuring out the wiring when he conducted his repair.

23   *See* Dkt. # 67-2 at 15:3–25.  In other words, there is circumstantial evidence that the technician

24   did not consult a wiring diagram to conduct this repair.  Also, no inspection of the e-stop wiring

was conducted after the accident, even though Plaintiff reported that the e-stop did not work as intended.  *See* Dkt. # 51-19 at 10:11–12:8.  Plaintiff also testified that he pressed the e-stop during the accident, but the lift continued to move.  Dkt. # 51-1 at 9:12–14.  In addition, although there is testimony that the switch was rewired after the accident, the technician that performed the repair testified that he "look[ed] at a schematic from the manufacturer to put [all the wires] back the same way that they were when they came out."  Dkt. # 67-4 at 13:1–25.  Even so, the e-stop was later found to be miswired.  Dkt. # 51-25 at 11–12.  A reasonable juror could find this evidence shows that technicians were prone to miswiring the e-stop during repairs, even if they consulted a wiring diagram.

What is more, Plaintiff presents evidence that rebuts Sunbelt's contention the miswiring is not a fact in issue because Plaintiff took his hand off the joystick during the accident.  *See* Dkt. # 45 at 9.  In particular, Sylester's testing showed that the lift would continue to move even if the joystick were released.  Dkt. # 51-25 at 26 ("Most notable during this test, however, was that the lift continued to roll down the ramp at a reduced speed and never came to a full stop even after the operator released the joystick.").  Sunbelt's arguments on this point are just as unavailing because it provides no citations to the record or other evidence to supports its claims that "the E-stop would have had no impact on the brakes regardless of how it was wired" and "[t]he E-stop switch simply interrupts power if it is being supplied through the drive enable switch."  Dkt. # 45 at 9 (emphasis removed); *see* Fed. R. Civ. P. 56(c)(1).

Thus, Sunbelt Rentals fails to show that there is no genuine dispute of material fact about whether the e-stop was miswired at the time of the accident and whether a miswired e-stop was a proximate cause of the accident.  The Court denies the motion for summary judgment on this claim.

1

2      3.      Res Ipsa Loquitur

3      If the doctrine of res ipsa loquitur applies, Plaintiff need not prove that Defendants

4  committed any specific act of negligence.  *Pacheco v. Ames*, 149 Wn.2d 431, 436, 69 P.3d 324

5  (2003).  Instead, an instruction on this doctrine "permits the inference of negligence on the basis

6  that the evidence of the cause of the injury is practically accessible to the defendant but

7  inaccessible to the injured person."  *Id.* (citing *Covey v. W. Tank Lines,* 36 Wash.2d 381, 390,

8  218 P.2d 322 (1950)).  Under Washington law, res ipsa loquitur applies only when the evidence

9  shows,

> (1) the accident or occurrence producing the injury is of a kind which ordinarily
> does not happen in the absence of someone's negligence, (2) the injuries are caused
> by an agency or instrumentality within the exclusive control of the defendant, and
> (3) the injury-causing accident or occurrence is not due to any voluntary action or
> contribution on the part of the plaintiff.

*Id.* (citation omitted) (cleaned up).

Among other arguments, Defendants contend that they did not retain "exclusive control"

over the scissor lift at the time of the accident, so Plaintiff is not entitled to a res ipsa loquitur

instruction.  Dkt. # 39 at 17; *see* Dkt. # 66 at 9–10.  But Plaintiff says "exclusive control" is

construed broadly and refers to "the right to control at the time of the accident."  Dkt. # 49 at 19

(citing *Ripley v. Lanzer*, 152 Wash. App. 296, 320, 215 P.3d 1020 (2009)).  He also says that this

requirement is satisfied if Defendants had "[l]egal control or responsibility for the proper and

efficient functioning of the instrumentality which caused the injury" and "a superior, if not

exclusive, position for knowing or obtaining knowledge of the facts which caused the injury[.]"

*Id.* (citing *Ripley*, 152 Wash. App. at 320 (2009)).  So he asserts that a res ipsa loquitur

instruction should be given because Custom Equipment "had full and exclusive control over the

design and manufacture of the drive motors and parking brake lever system" installed in the lift.

Dkt. # 49 at 19.  And because "the internal working of the e-stop button was exclusively within control of Sunbelt."  Dkt. # 50 at 23.

Yet the evidence contradicts Plaintiff's arguments.  Plaintiff's testimony shows that he was operating the lift at the time of the accident.  Dkt. # 51-1 at 9:13–10:2.  He also testified that he conducted a "daily lift inspection" on the day of the incident.  Dkt. # 46-2 at 10:3–10.  He also testified he needed to (1) disengage the e-stop before he could use the lift, *id.* at 8:10–15; and (2) that he activated the e-stop before the accident.  Dkt. # 51-1 at 14:2–21.  This testimony illustrates that Plaintiff was able to control and access the instrumentalities—the parking brake levers, drive motors, and e-stop switch—that he claims caused the accident.  This evidence likewise indicates that Plaintiff bore some responsibility for the proper functioning of these instrumentalities at the time of the accident.  In addition, Plaintiff identifies no evidence that would allow a reasonable juror to find Defendants possessed a superior or exclusive position for obtaining knowledge about the facts of the accident.  Thus, the evidence shows that Plaintiff's injuries were not caused by instrumentalities within the exclusive control of Defendants.  So all the requirements for a res ipsa loquitur instruction under Washington law are not met, and the Court concludes that this doctrine does not apply here.

## IV

### CONCLUSION

For all these reasons, the Court GRANTS in part and DENIES in part Defendants' Motions for Summary Judgment.  Dkt. ## 39; 45.

The Court GRANTS Defendants summary judgment with respect to (1) liability for all claims against SGI; (2) any after sale duty to warn claim under RCW 7.72.030(1)(c); and (3) Plaintiff's theory of res ipsa loquitur; the Court DISMISSES these claims with prejudice.  The Court otherwise DENIES Defendants' motions.

Dated this 9th day of January 2026.

John H. Chun
United States District Judge